UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

ANTHONY BEAUFORD, et al.,

                                      Plaintiff,

                -against-

CITY OF NEW YORK, et. al.,

                                    Defendants.

------------------------------------------------------------------------- x

**PLAINTIFFS' RESPONSE STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**
**15-CV-05872**

        Plaintiffs submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which movants, Defendants, contend there are no genuine issues to be tried:

        1.      On May 11, 2013, plaintiff Shauna Simmons was returning to her apartment from going to the store to get sandwiches when she witnessed an altercation occurring on Lorraine Street near her residence. (Exhibit A, Simmons Deposition, 18:9-19:3)

    **Undisputed**

        2.      The altercation involved a number of individuals, including at least one man, two women, and some police officers. (Exhibit A, Simmons Dep. 19:10-16).

    **Undisputed**

        3.      At the time plaintiff Simmons lived on 80 Bush Street in Red Hook, Brooklyn. (Exhibit A, Simmons Dep. 4:8-10).

    **Undisputed**

4.      As she was walking into her building, she encountered her son, Anthony Beauford and her boyfriend Arthur Lawyer standing outside of 80 Bush Street. (21:22-22:4).

**Undisputed**

5.      A few minutes after plaintiff Simmons arrived in her apartment, there was a knock on her door, and two male police officers were at her door. (Exhibit A, Simmons Dep. 27:1-14).

**Undisputed**

6.      The officers came into the apartment, in the process, pushing plaintiff Simmons backwards into a freezer in her apartment. (Exhibit A, Simmons Dep. 36:17-37:13).

**Undisputed**

7.      The officers searched the living room of the apartment, spoke to the occupants, and then left. (Exhibit A, Simmons Dep, 44:17-45:16).

**Undisputed**

8.      After the officers left the apartment, plaintiff Simmons was taken by ambulance to Long Island College Hospital. (Exhibit A, Simmons Dep. 52:19-53:11).

**Undisputed**

9.      Plaintiff Simmons did not ask any of the officers to call an ambulance for her (Exhibit A, Simmons Dep, 53:12-16).

**Undisputed**

10.      Back at the precinct, Officer Wilson identified plaintiff Lawyer as the individual who took his badge from a number of photographs. (Exhibit E, District Attorney File).

**11.      Disputed**

12. While Simmons was at the apartment the officers returned to the apartment a second time. (Exhibit B, Beauford Dep, 45:8-21).

**Disputed**

13. Plaintiff Beauford, his girlfriend, and their son were in the apartment at the time, but only Beauford was in one of the common areas of the apartment. (Exhibit B, Beauford Dep, 45:8-46:10).

**Undisputed**

14. When the officer returned to the apartment, they searched the apartment more thoroughly than the previous occasion, and recovered the missing badge and some marijuana from the apartment. (Exhibit B, Beauford Dep, 47:3-21).

**Disputed**

15. Beauford was arrested after the badge and drugs were found in the apartment. (Exhibit B, Beauford Dep, 49:18-50:10).

**Disputed.**

16. The Kings County District Attorney's Office declined to prosecute the case against plaintiff Beauford. (Exhibit C, Decline to Prosecute Letter).

**Undisputed**

17. At the hospital, Simmons complained that she could not breathe and that her chest was hurting, and she was given an x-ray. (Exhibit A, Simmons Dep. 58:14-59:3).

**18. Undisputed, except that Simmons also complained of other injuroes, including back pain.**

19. She was released from the hospital and told to visit her primary care doctor. (Exhibit A, Simmons Dep. 60:4-10).

**Undisputed.**

20.    When Simmons arrived outside of her building she was arrested by two officers. (Exhibit A, Simmons Dep. 69:14-25).

**Undisputed**

21.    She was told that she was under arrest for stealing a badge. (Exhibit A, Simmons Dep. 70:10-13).

**Undisputed**

22.    Plaintiff Simmons was arraigned the following day and accepted an adjournment in contemplation of dismissal on May 12, 2013. (Exhibit A, Simmons Dep. 93:22-94:14).

**Undisputed**

23.    Plaintiff Lawyer turned himself in to authorities on June 24, 2013. (Exhibit D, Amended Complaint, ¶ 33).

**Undisputed**

24.    Officer Wilson identified plaintiff Lawyer from a line-up as the individual who took his badge. (Exhibit F, Line-up Report).

**Undisputed**

25.    The charges against plaintiff Lawyer were dismissed when the grand jury in Kings County voted No True Bill. (Exhibit D, Amended Complaint ¶¶ 34-35).

**Undisputed**

**Plaintiff's Counter Statement of Undisputed 56.1 Facts**

1.      On May 11, 2013 P.O. James Wilson was involved in a physical altercation in the courtyard in front of 80 Bush Street (James Wilson Interview with CCRB, D22[1]).

2.      During this encounter, James Wilson lost his badge (Id).

3.      Wilson did not see anyone take his badge (Id).

4.      On May 11, 2013 at or about 5:00 p.m., Simmons and Rudy Hall ("Hall") were returning to Simmons's apartment at 80 Bush, Apt. 3A ("Simmons's Apartment") after running errands  (Defendants' Exhibit A, Simmons Dep. 16:9-12).

5.      Around the same time, upon hearing a commotion, Lawyer and Beauford, who were in Simmons's apartment, came downstairs to meet Simmons (Defendants' Exhibit B, Beauford Dep, 34:15-23).

6.      Hall and Simmons saw an altercation occurring in front of 80 Bush, and Simmons and Hall stopped to observe (Simmons Interview with CCRB, D17).

7.      Beauford and Lawyer were watching the altercation from a ramp in front of 80 Bush (Plaintiffs' Exhibit A, Lawyer Dep. 23:18-21).

8.      A video was taken of the altercation. This video fairly and accurately portrayed the scene. Lawyer can be seen in the video on the ramp with Beauford, uninvolved in the altercation (Plaintiffs' Exhibit A, Lawyer Dep. 68:9-19).

9.      Simmons, Lawyer, Hall, Beauford went in to 80 Bush and into Simmons's apartment. (Defendants' Exhibit A, Simmons Dep. 23:1-8).

10.      Officers entered 80 Bush and began knocking on every door in the building (P.O. Healy's Interview with CCRB, D21).

---

[1] D = Defendants discovery disclosures, ## - the page number of the disclosure.

11.    Hearing a knock, Plaintiff Shauna Simmons ("Simmons") opened the door (Defendants' Exhibit A, Simmons Dep. 24:3-15).

12.    Simmons did not allow the officers in and closed the door (Defendants' Exhibit A, Simmons Dep. 24:22-25).

13.    A few minutes later, the officers again knocked on Simmons's (Defendants' Exhibit A, Simmons Dep. 26:23-27:24).

14.    Simmons told Lt. Paul Mckenna ("Mckenna") that they could not come in without a warrant (Shauna Simmons's Interview with CCRB, D17).

15.    P.O. Brett Healy ("Healy") pushed past Mckenna, shoved Simmons with two hands and entered the apartment (Shauna Simmons's Interview with CCRB, D17).

16.    Simmons fell back into a refrigerator as a result of this shove (Id.).

17.    Mckenna approached Hall and demanded that Hall give him "the shield" (CCRB Interview with Rudy Hall, D18).

18.    Mckenna ordered Hall to stand, Hall complied (Id.).

19.    Mckenna put his hands in Hall's left front pants pocket, then his rear left pocket, followed by the rear right pocket and the front right pocket Id.).

20.    Mckenna then frisked Hall (Id.).

21.    Lawyer verbally objected to the officers' entrance and actions and forcefully asked the officers to leave the apartment Lawyer Interview with CCRB, D16).

22.    Lawyer asked for the officers badge numbers (Id.).

23.    Lawyer spoke directly with James Wilson, Mckenna, Sgt. Daniel Casella ("Casella"), and Healy for their badge numbers (Id.).

24.    Healy and Mckenna provided their names verbally (Id.).

25.   James Wilson is the officer who claims his badge was taken (Id.).

26.   Lawyer asked James Wilson for his badge number (Id.).

27.   James Wilson shouted in Lawyer's face "I don't have a badge" (Id.).

28.   Wilson did not identify Lawyer as the individual who allegedly stole his badge (Id.).

29.   Casella refused to provide any information (Id.).

30.   Arthur Lawyer began taking photographs of the officers (Id.).

31.   James Wilson returned to the precinct and was shown Arthur Lawyer's photograph. Wilson was shown no other photographs (CCRB Interview with James Wilson at D156).

32.   Wilson was shown a photograph of Lawyer that was months or years old (Id.)

33.   At approximately 9:30 p.m. Officers Thomas Jurewicz ("Jurewicz") and Detective Colin Wilson returned to Simmons's apartment (Anthony Beauford Interview with CCRB at D19).

34.   Colin Wilson and Jurewicz were dressed in suits  (Anthony Beauford Interview with CCRB at D19).

35.   Beauford opened the door to speak to them (Anthony Beauford Interview with CCRB at D19); (Defendants' Exhibit B, Beauford Dep. 45:22-46-2).

36.   Immediately upon Beauford's opening of the door, Colin and Jurewicz pushed past Beauford (Anthony Beauford Interview with CCRB at D19).

37.   Mckenna, James Wilson, and Healy, who were hiding around the corner, ran into the apartment once the detectives entered (Anthony Beauford Interview with CCRB at D19), (Defendants' Exhibit B, Beauford Dep. 46:3-7).

38.    The officers put twist ties on Beauford's wrists and began searching the entire apartment (Defendants' Exhibit B, Beauford Dep. 46:8-10).

39.    Beauford saw the officers enter Simmons's bedroom, then emerge claiming that they "found it" (Defendants' Exhibit B, Beauford Dep. 47:18-23).

40.    Beauford did not see the officers recover anything (Defendants' Exhibit B, Beauford Dep. 49:13-17).

41.    Two of the officers that entered Simmons's room were James Wilson and Healy (CCRB Interview with James Wilson at D24).

42.    Beauford was escorted to a police vehicle (CCRB Interview with Anthony Beauford at D24).

43.    Simmons was arrested in front of 80 Bush Street apartment building and taken to a police vehicle (Shauna Simmons CCRB Interview at D84).

44.    The old photograph from the police database was disseminated to the media and and in print publications, along with Arthur Lawyer's name (Plaintiffs' Exhibit A, Lawyer Dep. 70:12-19).

Dated: New York, New York       **Robert Marinelli, Esq.**
       July 12, 2018            Attorney for Plaintiff
                                305 Broadway, Suite 1001
                                New York, New York 10007
                                (212) 822-1427


                                By:    /s _____
                                       Robert Marinelli, Esq.


cc:    Angharad Wilson Esq. (**via ECF**)
       *Attorney for Defendants*
w3